| | |
|---|---|
| JASON DAVID HOLLIS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     1:12CV1297 |
| | ) |
| REUBEN FRANKLIN YOUNG, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On June 10, 2010, in the Superior Court of Cabarrus County, Petitioner pled guilty to statutory rape/sex offense and providing child care in a sex offender's home in cases 09 CRS 52715 and 52686. (Docket Entry 1, ¶¶ 1, 2, 4-6; see also Docket Entry 7, Exs. 1, 2, 20.) In accordance with Petitioner's plea arrangement, the trial court sentenced Petitioner in the mitigated range to 230 to 285 months in prison. (Docket Entry 1, ¶ 3; see also Docket Entry 7, Exs. 1-4, 20.) Petitioner did not pursue a direct appeal of his convictions. (See Docket Entry 1, ¶ 9.)[1]

Petitioner thereafter submitted to the state trial court a pro se motion for preparation of the stenographic transcript from his plea hearing (Docket Entry 7, Ex. 5), which he dated as submitted

---

[1] Petitioner checked the box for "Yes" regarding whether he appealed (Docket Entry 1, ¶ 8); however, when asked to provide information about that appeal, Petitioner identified his collateral attack on his convictions, rather than any direct appeal (see id. § 9).

on July 25, 2011 (id. at 4),[2] and which the trial court stamped as filed on August 1, 2011 (id. at 2). On August 3, 2011, the trial court granted Petitioner's motion and ordered the court reporter to provide copies of the plea hearing transcript to Petitioner and to the State. (Docket Entry 7, Ex. 6.)

Petitioner then submitted a motion for appropriate relief ("MAR") to the state trial court (Docket Entry 7, Ex. 7; see also Docket Entry 1 at 2, 5-6, 7, 9, 10),[3] which the trial court received as filed on June 13, 2012 (Docket Entry 7, Ex. 8 at 2 (indicating date filed)).[4] By order dated July 3, 2012, and filed July 5, 2012, the trial court construed Petitioner's earlier motion for preparation of a stenographic transcript as a MAR and denied both that MAR and Petitioner's June 13, 2012 MAR. (Docket Entry 7, Ex. 8; see also Docket Entry 1 at 2, 5-6, 7, 9, 10.)

Petitioner thereafter filed a pro se certiorari petition with the North Carolina Court of Appeals (Docket Entry 7, Ex. 9; see also Docket Entry 1 at 2, 6, 7-8, 9, 11), which the Court of Appeals stamped as filed on July 19, 2012 (Docket Entry 7, Ex. 9 at

_____

[2] For attachments to Respondent's memorandum in support of his instant Motion to Dismiss, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

[3] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

[4] Petitioner dated the MAR as submitted on July 13, 2012 (Docket Entry 7, Ex. 7 at 11); however, given that the trial court denied that MAR on July 3, 2012 (Docket Entry 7, Ex. 8 at 4), the July 13, 2012 date appears to represent the date on which Petitioner submitted the document to which the copy of the MAR was attached, i.e., the certiorari petition to the North Carolina Court of Appeals (Docket Entry 7, Ex. 9 at 2 (indicating a file date of July 19, 2012); see also id. at 11-24), rather than the date on which he actually submitted the MAR to the trial court.

-2-

2).[5]  The Court of Appeals denied Petitioner's certiorari petition by order dated August 3, 2012.  (Docket Entry 7, Ex. 11.)

Petitioner subsequently filed a pro se certiorari petition (in which he also requested appointment of counsel) and an affidavit in support of a request to proceed in forma pauperis in the North Carolina Supreme Court (Docket Entry 7, Ex. 12; see also Docket Entry 1 at 2-3, 8, 9, 11), all of which he dated as submitted on August 16, 2012 (Docket Entry 7, Ex. 12 at 10, 11), and which that court accepted as filed on August 22, 2012 (id. at 2).  By order dated October 4, 2012, the North Carolina Supreme Court granted Petitioner pauper status and denied the certiorari petition and request for appointment of counsel.  (Docket Entry 7, Ex. 13.)

Petitioner thereafter submitted his Petition in this Court (Docket Entry 1), which he dated as signed on November 21, 2012 (id. at 14),and which the Court stamped as filed on December 4, 2012 (id. at 1).  Respondent moved to dismiss the Petition on statute of limitations grounds (Docket Entry 6) and Petitioner responded in opposition (Docket Entries 9, 10).

## Claims

Petitioner raises four claims for relief in his Petition: (1) he received ineffective assistance of his trial counsel in that counsel failed to make sufficient motions for suppression of evidence and other pretrial and preliminary motions; (2) law enforcement violated his Miranda rights and Fifth Amendment right

---

[5] Petitioner did not properly date the certiorari petition, indicating only the month (July) and year (2012) of submission and otherwise leaving the areas for dates blank.  (See Docket Entry 7, Ex. 9 at 4, 5.)

against self-incrimination by "urging or bribing" him to sign a "prewritten statement" while he was under the influence of "mind [and] mood altering medications which cause drowsiness"; (3) the district attorney and law enforcement fabricated the charge of "conducting a childcare facility in a sex offender home" and obtained a "false" arrest warrant; and (4) the magistrate based his or her determination of probable cause for the arrest warrant on false statements by the victim's father that Petitioner was conducting a childcare facility in a sex offender's home and law enforcement failed to investigate the truth of those allegations. (Docket Entry 1 at 5, 6-7, 8, 10.)

## **Discussion**

Respondent moves for dismissal of the Petition on the grounds that the Petition was filed[6] outside of the one-year limitation period. 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when

---

[6] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

-4-

Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

<u>Green v. Johnson</u>, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any grounds for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case. As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

-5-

Here, the trial court entered judgment against Petitioner on June 10, 2010 (see Docket Entry 7, Ex. 2), and Petitioner did not pursue a direct appeal. As Respondent has asserted (Docket Entry 7 at 3-5), and Petitioner has not disputed (see Docket Entries 9, 10), Petitioner's convictions became final on the date the trial court entered judgment against him, because he pleaded guilty and received a sentence with a minimum term in the mitigated range (lower than the presumptive range) for his prior record level and class of offense, see N.C. Gen. Stat. § 15A-1340.17(c), (e) (2010). In North Carolina, defendants who plead guilty have very limited grounds on which they can appeal. See State v. Smith, 193 N.C. App. 739, 741-42, 668 S.E.2d 612, 613-14 (2008) (enumerating limited grounds for appeal for defendants who plead guilty); see also N.C. Gen. Stat. §§ 15A-979(b) & 15A-1444. As Petitioner has not alleged or otherwise shown that any of these grounds for appeal existed, his time to file a habeas petition in this Court began to run on June 10, 2010. Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004); accord Redfear v. Smith, No. 5:07CV73-03-MU, 2007 WL 3046345, at *2 (W.D.N.C. Oct. 17, 2007) (unpublished); Marsh v. Beck, No. 1:06CV1108, 2007 WL 2793444, at *2 (M.D.N.C. Sept. 26, 2007) (unpublished).[7] The limitations period then ran for 365 days and fully expired on June 10, 2011, without Petitioner having filed any post-conviction petitions in state or federal court.

---

[7] Even if Petitioner had possessed a right to appeal, any such right would have expired 14 days after the trial court entered judgment against him. See N.C. R. App. P., Rule 4(a)(2). Given when Petitioner filed his instant Petition, those 14 days would not affect the timeliness analysis.

-6-

Petitioner did make certain state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)," Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any collateral filings in the state courts until July 25, 2011, 45 days after his time to file a federal habeas claim had already expired. State filings made after the federal limitations period has passed do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Petitioner does not dispute the foregoing time-line, but he does advance several reasons why he believes the Court should consider the Petition despite its untimeliness. (See Docket Entry 1, ¶ 18; Docket Entry 9 at 1-2; Docket Entry 10 at 1-2.) In other words, Petitioner has requested equitable tolling, which doctrine the United States Supreme Court has ruled applicable in this context, Holland v. Florida, 560 U.S. ___, ___, 130 S. Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (emphasis added).

First, Petitioner asserts that he did not have "any idea" how to file a MAR until he entered prison and received a packet

-7-

containing instructions on filing MARs. (Docket Entry 1, ¶ 18; see also Docket Entry 9 at 1-2; Docket Entry 10 at 1.) Petitioner asks the Court to take his lack of knowledge regarding state post-conviction procedure "into consideration and not bar any of [his] Petition." (Id.) Petitioner's statements appear to represent an argument that he lacked familiarity with post-conviction remedies and that such unfamiliarity excuses his late filing. However, unfamiliarity with the legal process, even in the case of an unrepresented prisoner, does not constitute grounds for equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); March v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999); Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *3 (M.D.N.C. Sept. 9, 2011) (unpublished) (citing Hood v. Jackson, No. 5:10-HC2008-FL, 2010 WL 4974550, at *2 (E.D.N.C. Dec. 1, 2010) (unpublished), and Dockery v. Beck, No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. Aug. 1, 2002) (Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished)), adopted, slip op. (M.D.N.C. Nov. 4, 2011) (Beaty, C.J.)).[8]

Petitioner next contends that "limitations periods known as laches may apply in situations of equity" and that "it may be inequitable to allow the state respondents to use the defense of [the] running of the statute of limitation period" in light of

_____

[8] To the extent Petitioner requests the Court to "stay" his Petition due to his lack of legal knowledge (see, e.g., Docket Entry 9 at 1; Docket Entry 10 at 2), the request should be denied. Petitioner has proffered no grounds for the issuance of a stay order.

-8-

Petitioner's lack of legal knowledge. (Docket Entry 9 at 2.) This contention (and particularly Petitioner's reliance on the doctrine of laches) cannot stand. The passage in 1996 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1), which mandates the one-year limitations period at issue here, superceded Rule 9(a) of the Rules Governing Sec. 2254 Cases in U.S. Dist. Cts. and prior practice as to the doctrine of laches in habeas cases. <u>See</u> <u>Langley v. Director, Dep't of Corr.</u>, No. 2:09cv436, 2010 WL 2483876, at *6 (E.D. Va. May 28, 2010) (unpublished).[9] Petitioner clearly did not file his Petition within the one-year limitations period proscribed by AEDPA and, as discussed above, he has failed to establish any grounds warranting equitable tolling.

In sum, the Petition is untimely.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 6) be **GRANTED**, that the Petition (Docket Entry 1) be **DISMISSED**, and that this action be **DISMISSED**.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 5, 2013

---

[9] Rule 9(a) provided that "[a] petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in the ability to respond to the petition by delay in its filing."